**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DeAnn J. Drottz,<br><br>        Plaintiff,<br><br>vs.<br><br>Park Electrochemical Corporation; Park Advanced Product Development Corporation,<br><br>        Defendants. | No. CV 11-1596-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Defendants Park Electrochemical Corporation and Park Advanced Product Development Corporation's ("Defendants") Motion to Dismiss. (Doc. 20). The Court now rules on the motion.

**I.    BACKGROUND**

Plaintiff's Second Amended Complaint ("Complaint") contains the following factual allegations, which the Court accepts as true for the purposes of Defendants' Motion to Dismiss.[1]  Plaintiff started working for Defendant Park Advanced Product Development

---

[1] Plaintiff's response to Defendants' motion periodically refers to the original complaint. *E.g.*, (Doc. 21 at 8) (quoting from the Original Complaint). To the extent that Plaintiff's response refers to information that is contained in the Original Complaint, but not in the Second Amended Complaint, the Court will ignore those portions because an amended complaint supersedes any prior complaints. *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter being treated thereafter as non-existent.") (citations omitted).

1  Corporation ("PAPDC") on September 24, 2007. (Doc. 12 at ¶ 7). Defendant Park
2  Electrochemical Corporation ("PEC") is the parent company of PAPDC, and the Complaint
3  alleges that nearly all of Plaintiff's supervisors and managers were employees of PEC. (*Id.*).
4  Plaintiff is a well-qualified employee and received high ratings from her former supervisor,
5  Doug Leys. (*Id.* at ¶ 8).

6  Early in 2010, Ke Wang become Plaintiff's new supervisor. (*Id.* at ¶ 9). Under
7  Wang's supervision, Plaintiff alleges various incidents in which Wang acted inappropriately,
8  including that Wang: (1) "belittled and insulted" her in front of others; (2) criticized and
9  yelled at her unnecessarily; (3) blamed her for problems beyond her control; and (4) on one
10 occasion physically forced himself into Plaintiff's office by "put[ing] his foot onto the middle
11 of the door, forcing his way in, [and] pushing [Plaintiff's] hand off the door." (*Id.* at ¶¶
12 9–26). Plaintiff also alleges that manager Greg Westphal repeatedly ignored her attempts to
13 report Wang's behavior, and instead blamed Plaintiff as the source of the problems. (*Id.* at
14 ¶ 16).

15 Plaintiff reported Westphal and Wang's behavior to Westphal's boss, Sue Macaluso.
16 (*Id.* at ¶¶ 16, 20). Macaluso stated that she would discuss the situation with Westphal and
17 "handle the situation" with Wang. (*Id.* at ¶¶ 20, 26). After the incident in which Wang
18 forced himself into Plaintiff's office, Plaintiff alleges she was "afraid that Wang would
19 become physically violent with her." (*Id.* at ¶ 26). Consequently, Plaintiff spoke with
20 Human Resources Coordinator Joan Couet and filed a written complaint. (*Id.*). Couet
21 forwarded Plaintiff's written complaint to Macaluso and Westphal, who subsequently met
22 with Plaintiff to hand her a "disciplinary warning." (*Id.* at ¶ 27). The warning Plaintiff
23 received included several allegations of poor work performance and violations of company
24 policy, all of which Plaintiff denies. (*Id.*). Plaintiff alleges that no action was taken against
25 Wang, and Plaintiff was terminated on February 28, 2011. (*Id.* at ¶¶ 29–30). Plaintiff then
26 filed a claim with the Equal Employment Opportunity Commission ("EEOC") and received
27 a right-to-sue notice on May 19, 2011. (Doc. 20-1 at 5).

28 Plaintiff's Complaint alleges seven counts: (1) race and sex discrimination; (2) hostile

- 2 -

work environment; (3) retaliation; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) race discrimination and retaliation under 42 U.S.C. § 1981; and (7) wrongful discharge in violation of Ariz. Rev. Stat. Ann. § 23-1501(3)(C)(ii). (*Id.* at ¶¶ 37–67).

## II.     LEGAL STANDARD

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.* Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citation omitted).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a

complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III.  ANALYSIS

Defendants' Motion to Dismiss contains four arguments: (1) PEC should be dismissed because it never employed Plaintiff, and Plaintiff failed to name PEC in Plaintiff's EEOC complaint; (2) Plaintiff's fourth,[2] fifth, and seventh causes of action should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); (3) Plaintiff's entire Complaint should be dismissed for failure to join an indispensable party under Rule 12(b)(7) and (19); and (4) the Complaint should be stricken under Rule 8(a) and 12(f). The Court will consider each argument in turn.

### A.  Plaintiff's employer and her failure to name PEC in the EEOC complaint

At the outset of their motion, Defendants first argue that PEC should be dismissed because PEC never employed Plaintiff. (Doc. 20 at 3–4). Further, Defendants argue that even if PEC did employ Plaintiff, Plaintiff failed to exhaust her administrative remedies against PEC because she failed to name PEC as her employer in her formal EEOC complaint. (*Id.* at 4–5).

Defendants' administrative remedies argument lacks merit. Courts must construe EEOC complaints liberally. *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir. 1990) ("'EEOC

---

[2] Defendants' motion refers to Plaintiff's second cause of action as Plaintiff's intentional infliction of emotional distress claim. (Doc. 20 at 5). But, that claim is actually Plaintiff's fourth cause of action. (Doc. 12 at 24).

- 4 -

charges must be construed with the utmost liberality since they are made by those unschooled in the technicalities of formal pleading.'") (quoting *Kaplan v. Int'l Alliance of Theatrical and Stage Emps. and Motion Picture Machine Operators*, 525 F.2d 1354, 1359 (9th Cir. 1975)); *see also Serpe v. Four-Phase Sys., Inc.*, 718 F.2d 935, 937 (9th Cir. 1983) (relying on liberal interpretation principles in holding that, even though the EEOC complaint did not allege that the plaintiff was refused a promotion because she is a woman, the complaint was enough to confer subject matter jurisdiction over that claim because an EEOC investigation would have revealed her claims). Even failure to name a defendant in the EEOC complaint is not fatal so long as the unnamed defendant was "'involved in the acts giving rise to the [EEOC] claims.'" *Sosa*, 920 F.2d at 1459 (quoting *Wrighten v. Metro. Hosp.*, 726 F.2d 1346, 1352 (9th Cir. 1984)). Here, Plaintiff, now represented by counsel, alleges that all of her supervisors and managers are employees of PEC. Assuming that Plaintiff is correct, PEC, through its employees, was involved in the acts underlying Plaintiff's Title VII claims. Thus, PEC cannot be dismissed solely because it was not named in the EEOC complaint.

Defendants also argue that PEC should be dismissed because PEC was never Plaintiff's employer. Plaintiff argues that, under the economic realities test, PEC is a joint employer with PAPDC. Plaintiff further argues that, even if PEC is not a joint employer, it is liable as an indirect employer. Defendants respond that the economic realities test only applies when determining joint employer status under the Fair Labor Standards Act, and that the integrated enterprise test applies in the Title VII context.[3]

Both Defendants and Plaintiff are correct to some degree. The Ninth Circuit Court of Appeals has held that when courts determine whether an entity has enough employees to count as an employer for the purposes of Title VII *coverage*, the appropriate test is the

---

[3] Defendants' briefs refer to the "single employer" test, but the Ninth Circuit uses the term "integrated enterprise" to refer to the same test. *E.g.*, *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 815 (9th Cir. 2002) ("This circuit applies a four-part test to determine whether two entities are an integrated enterprise for the purposes of Title VII coverage.") (citation omitted).

- 5 -

integrated enterprise test. *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 928 (9th Cir. 2003) ("The [integrated enterprise] test does not determine joint *liability* . . ., but instead determines whether a defendant *can meet the statutory criteria* of an 'employer' for Title VII applicability.") (emphasis in original). But, when there is no dispute that at least one defendant qualifies as an employer under Title VII, the integrated enterprise test is wholly inapplicable. *Id.* at 929 ("[The defendant] does not dispute that it employs at least 15 employees. Because this places [the defendant] within Title VII's statutory coverage as an 'employer,' the integrated enterprise test is inapplicable.") (internal footnote omitted). Here, Defendants argue that the integrated enterprise test is appropriate to determine whether PEC is an employer for *liability* purposes, not coverage under Title VII in the first place. (Doc. 22 at 5). Plaintiff has alleged that both PEC and PAPDC employ over fifteen people, and Defendants have not yet disputed that claim or presented evidence to the contrary.[4] Thus, Defendants are incorrect that the integrated enterprise test applies in this case.

Plaintiff argues that the economic realities test applies when determining whether two employers jointly employ one employee. Title VII includes a short definition of "employee"; the statute says that "[t]he term 'employee' means any individual employed by an employer." 42 U.S.C. § 2000e(f) (2006). Defendants do not dispute that PAPDC is Plaintiff's employer. The issue is whether PEC is a joint employer with PAPDC.[5]

---

[4] Defendants' Motion to Dismiss states that "PAPDC is a Delaware corporation in good standing and is active with nine employees." (Doc. 20 at 4). Defendants cite an exhibit attached to their motion to support this assertion, but the exhibit nowhere mentions the number of people that PEC or PAPDC currently employs. (Doc. 20-1 at 7–8). Moreover, "as a general rule, a district court may not consider materials beyond the pleadings in ruling on a 12(b)(6) motion." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). There are exceptions to this general rule, but Defendants have not provided the Court with which exception, if any, applies to the exhibit attached to their motion.

[5] It should be noted that whether a plaintiff is jointly employed is typically a factual issue addressed after the plaintiff has had an opportunity to conduct discovery. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964) ("[W]hether [an entity] possessed sufficient indicia of control to be an 'employer' is essentially a factual issue."); *see also Robinson v. Sappington*, 351 F.3d 317, 338 (7th Cir. 2003) ("[T]he issue of a joint employer relationship

- 6 -

1 Plaintiff is correct that the Ninth Circuit has used the economic realities test to
2 determine whether a plaintiff is a direct employee under Title VII. *King v. Corcoran State*
3 *Prison*, No. 1:10-cv-00878-LJO-SKO, 2011 WL 2295035, at *2 (E.D. Cal. June 9, 2011)
4 (citing *EEOC v. Pac. Mar. Ass'n*, 351 F.3d 1270, 1275–77 (9th Cir. 2003)).[6] Plaintiff is also
5 correct that the Ninth Circuit has used a different test in order to find an employer liable even
6 if it does not directly employ the plaintiff. *Baker v. McNeil Island Corr. Ctr.*, 859 F.2d 124,
7 127–28 (9th Cir. 1988) (citing *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th
8 Cir. 1980)). The test Plaintiff refers to is known as the "common law hybrid test." *Murray*

---

[is] a question of fact, which preclude[s] summary judgment."). The fact that it is not clear on the face of the Complaint whether PEC jointly employs Plaintiff weighs in favor of denying Defendants' Motion to Dismiss and allowing discovery. *Cf. Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (holding that a complaint should not be dismissed under Rule 12(b)(6) on statute of limitations grounds unless it is clear on the face of the complaint that the plaintiff cannot possibly establish timeliness).

[6] Defendants argue that the economic realities test only applies when "determining joint employer status under the Fair Labor Standards Act." Doc. 22 at 2. Plaintiff cites a published Ninth Circuit opinion that applies the economic realities test in the Title VII context. *See EEOC v. Pac. Mar. Ass'n*, 351 F.3d 1270 (9th Cir. 2003) *reh'g granted*, 367 F.3d 1167 (9th Cir. 2004). As the court in *Brown* pointed out, however, that opinion was "withdrawn ahead of a rehearing en banc." *Brown v. Arizona*, No. CV-09-2272, 2011 WL 2911054, at *3 n.2 (D. Ariz. July 20, 2011). The parties in *Pacific Maritime* stipulated to a dismissal before the rehearing took place, and the "Ninth Circuit never vacated its prior order or reinstated the opinion of the three-judge panel." *Id.* Thus, the *Brown* court did not treat *Pacific Maritime* as binding, but did find it persuasive. *Id.* Many courts in this circuit have approvingly cited *Pacific Maritime* for the proposition that the economic realities test applies in the Title VII context. *E.g.*, *EEOC v. Global Horizons, Inc.*, Cv. No. 11-00257 DAE-RLP, 2012 WL 928160, at *7 (D. Haw. Mar. 16, 2012); *King*, 2011 WL 2295035, at *2; *Miljkovic v. Univ. of Haw., President's Office*, Civ. No. 09-00064 ACK-KSC, 2011 WL 237028, at *6 (D. Haw. Jan. 21, 2011); *Rubino v. ACME Bldg. Maint.*, No. C08-00696, 2008 WL 5245219, at *3 (N.D. Cal. Dec. 15, 2008); *Garcia v. Courtesy Ford, Inc.*, No. C06-855RSL, 2007 WL 1192681, at *5–6 (W.D. Wash. April 20, 2007). Further, the Ninth Circuit has consolidated the various tests, including the economic realities test, into a single test and has found that test applicable in the Title VII context. *Murray v. Principal Financial Grp., Inc.*, 613 F.3d 943, 945 (9th Cir. 2010) (citations omitted). Thus, the economic realities test, as incorporated under *Murray*, is applicable in the Title VII contest.

- 7 -

1  *v. Principal Financial Grp., Inc.*, 613 F.3d 943, 945 (9th Cir. 2010) (citations omitted).

2  The Ninth Circuit has recently clarified and consolidated the various tests that have
3  been used to determine employment status in Title VII cases. *Id.* The *Murray* court found
4  three formulations of the test for employment status in the Ninth Circuit: "a 'common law
5  agency' test, an 'economic realities' test, and a 'common law hybrid' test." *Id.* Although
6  the three tests have slight differences, the *Murray* court held that "there is no functional
7  difference between the three formulations." *Id.* (citation omitted). The common law agency
8  test was announced by the Supreme Court in *Darden*. *Nationwide Mut. Ins. Co. v. Darden*,
9  503 U.S. 318, 323 (1992). Thus, to the extent that there are any differences between the
10 three tests, the *Darden* analysis controls.[7] *Murray*, 613 F.3d at 945.

11 The inquiry under *Darden* for whether a plaintiff is an employee is "the [defendant's]
12 right to control the manner and means by which the [plaintiff's work] is accomplished."
13 *Darden*, 503 U.S. at 323. Some factors relevant to this inquiry are:

> [1] the skill required; [2] the source of the instrumentalities and tools; [3] the location of the work; [4] the duration of the relationship between the parties; [5] whether the hiring party has the right to assign additional projects to the hired party; [6] the extent of the hired party's discretion over when and how long to work; [7] the method of payment;[8] the hired party's role in hiring and paying assistants; [9] whether the work is part of the regular business of the hiring party; [10] whether the hiring party is in business; [11] the provision of employee benefits; and [12] the tax treatment of the hired party.

*Id.* Plaintiff alleges that all of her supervisors and managers were employees of PEC. Defendant has not disputed that claim. Without the aid of discovery and assuming Plaintiff's allegations are true, PEC had complete control over the manner and means of Plaintiff's work. Indeed, according to the Complaint, it was PEC who hired Plaintiff, assigned Plaintiff her work projects, provided Plaintiff feedback regarding her work, dictated when and where Plaintiff would work, disciplined Plaintiff when necessary, committed the acts the Complaint

---

[7] While true that *Darden* arose in the ERISA context, ERISA's definition of "employee" is verbatim the same as Title VII. *Compare* 29 U.S.C. § 1002(6), *with* 42 U.S.C. § 2000e(f). Thus, "[t]here is no reason why the *Darden* test would be inappropriate in the Title VII context." *Murray*, 613 F.3d at 945.

- 8 -

1 alleges, and ultimately fired Plaintiff. Thus, Plaintiff's Complaint properly alleges that PEC
2 is her employer for Title VII purposes.

### B. The sufficiency of Plaintiff's fourth, fifth, and seventh causes of action

Defendant argues that Plaintiff has not sufficiently pleaded her fourth, fifth, and seventh causes of action. (Doc. 20 at 5–12). Plaintiff concedes that her fifth cause of action—negligent infliction of emotional distress—is barred by Arizona's Worker's Compensation Statute. (Doc. 21 at 5). Thus, the Court need only determine the sufficiency of Plaintiff's fourth and seventh causes of action.

Plaintiff's fourth cause of action is for intentional infliction of emotional distress ("IIED"). In order to state a claim for IIED, Plaintiff must sufficiently allege: (1) "conduct by the defendant [that is] 'extreme' and 'outrageous'"; (2) that "the defendant . . . intend[ed] to cause emotional distress or recklessly disregard[ed] the near certainty that such distress [would] result from his conduct"; and (3) that "severe emotional distress . . . occur[red] as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987). Defendants argue that the conduct Plaintiff alleges, even if true, is not sufficiently extreme or outrageous enough to satisfy the first element of an IIED claim. (Doc. 20 at 5–7).

In order to satisfy the extreme and outrageous prong, Plaintiff must allege conduct that is "so outrageous in character and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. 1995) (citations omitted) (internal quotation marks omitted). It is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id.* (citation omitted) (internal quotation marks omitted). In *Bell Atlantic*, the plaintiff, Mintz, alleged that she was repeatedly passed over for promotions based on her sex. *Id.* at 561. As a result of the discrimination, Mintz was hospitalized for "severe emotional and psychological problems." *Id.* Initially, Mintz's employer paid her short term disability benefits. *Id.* Despite knowing that Mintz's doctor had recommended she not return to work until October 1, Mintz's

- 9 -

1 employer stopped paying her short term disability and ordered her to work on September 11.
2 *Id.* Mintz returned to work as ordered, and was back in the hospital the next day as a result
3 of the stress. *Id.* The Arizona Supreme Court found that Mintz had failed to sufficiently
4 plead outrageous and extreme conduct to state an IIED claim. *Id.* at 564 ("Although we can
5 certainly see the apparent callousness and insensitivity of delivering a job-reassignment letter
6 to an employee in Mintz's condition, we conclude that the trial court did not err in ruling that
7 the facts alleged by Mintz were not sufficiently extreme and outrageous to state a claim
8 against her employer for intentional infliction of emotional distress.").

9 Plaintiff's response to Defendants' Motion to Dismiss defends her IIED claim in only
10 one sentence. (Doc. 21 at 5) (citing *Ford*, 734 P.2d at 585). Plaintiff's reliance on *Ford* is
11 misplaced. In *Ford*, Letta Ford's supervisor, Braun, engaged in a campaign of sexual
12 harassment that included numerous explicit, expletive-filled demands for sexual contact.
13 *Ford*, 734 P.2d at 581–83. After Ford spurned his repeated advances, Braun on one occasion
14 grabbed her in a choke hold with one hand and sexually assaulted Ford with his other hand.
15 *Id.* at 582. Ford complained of this conduct to more than eight different people within her
16 employer's (Revlon) organization, none of whom took any action for over a year, even after
17 determining that Ford was telling the truth. *Id.* at 582–83. Ford ended up attempting suicide
18 as a result of the onslaught of harassment, and she eventually sued her employer for IIED.
19 *Id.* at 583. The Arizona Supreme Court upheld the jury's verdict finding Revlon liable for
20 IIED, stating that it was outrageous for Revlon to ignore Braun's extreme and outrageous
21 conduct. *Id.* at 585–86.

22 Here, Defendants are correct that Plaintiff has failed to sufficiently plead extreme and
23 outrageous conduct in order to establish an IIED claim. The conduct Plaintiff alleges is
24 nowhere near the conduct found outrageous and extreme in *Ford*. Moreover, the alleged
25 conduct does not even rise to the same level of outrageousness as the employer's conduct in
26 *Mintz*. The most extreme conduct Plaintiff alleges is that Wang forced himself into her office
27 in order to hear her conversation with Macaluso, and then left once he realized she wanted
28 to speak in private. (Doc. 12 at ¶ 26). Plaintiff also alleges that Wang yelled at her and

called her a liar on multiple occasions. While incredibly rude, this conduct is not so extreme as to go beyond all bounds of decency. Thus, Plaintiff has failed to sufficiently state an IIED claim.

Plaintiff's seventh cause of action is for wrongful discharge in violation of Arizona's Employment Protection Act ("AEPA"), which states that:

> 3. An employee has a claim against an employer for termination of employment only if one or more of the following circumstances have occurred:
> . . . .
>
> (c) The employer has terminated the employment relationship of an employee in retaliation for any of the following reasons:
> . . . .
>
> (ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

Ariz. Rev. Stat. Ann. § 23-1501(3)(C)(ii) (2012) (West). By the plain terms of the AEPA, a plaintiff must point to a predicate Arizona constitutional provision or statute that the employer "is violating or will violate." *Id.* In order to fulfill that requirement, Plaintiff alleges that she was terminated in retaliation for reporting conduct that constitutes criminal assault under Ariz. Rev. Stat. Ann. § 13-1203 and harassment under Ariz. Rev. Stat. Ann. § 13-2921. (Doc. 12 at ¶ 64). Defendants respond that the conduct alleged in the complaint does not show a violation of either predicate statute Plaintiff cites.

An actual violation of the predicate statute need not occur. *Logan v. Forever Living Prod. Int'l, Inc.*, 52 P.3d 760, 763 (Ariz. 2002) (citing *Wagonseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1035 (Ariz. 1985)). Rather, the AEPA allows wrongful termination claims when an employee has a reasonable belief that the employer "has violated, is violating, or will violate the Constitution of Arizona or the statutes of this state." Ariz. Rev. Stat. Ann. § 23-1501.

- 11 -

Plaintiff alleges that she was terminated in retaliation for reporting conduct that is forbidden by Arizona's criminal assault and harassment statutes. (Doc. 12 at ¶¶ 63–67). Criminal assault in Arizona is defined as: (1) "[i]ntentionally, knowingly or recklessly causing any physical injury to another person;" (2) "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury;" or (3) "[k]nowingly touching another person with the intent to injure, insult or provoke such person." Ariz. Rev. Stat. Ann. § 13-1203(A) (2012) (West). Plaintiff has alleged conduct that, if true, satisfies subsection three. Plaintiff alleges that immediately following a heated discussion with Wang, Wang forced his way into her office by "pushing [her] hand off the door." (Doc. 12 at ¶ 26). Given these facts, Plaintiff has alleged that Wang knowingly touched her with an intent to either insult or provoke. *See King v. Cross*, No. 10-cv-879-DRH, 2011 WL 5877447, at *6 (S.D. Ill. Nov. 23, 2011) ("Any degree of touching could violate Arizona['s] simple assault statute as it encompass[es] 'knowingly touching another person with the intent to . . . insult or provoke such person.'") (quoting Ariz. Rev. Stat. Ann. § 13-1203(A)(3)). Defendants are correct that Wang's behavior may not rise to the level of intentionally causing injury or placing Plaintiff in reasonable apprehension of imminent injury under subsections one and two. However, it is reasonable to infer from the facts in Plaintiff's Complaint that Wang acted with an intent to provoke or insult. At this early stage, the Court cannot find that Plaintiff has failed to state an AEPA claim under Rule 12(b)(6) standards.[8]

### C. Plaintiff's failure to join her spouse in the Complaint

Defendants argue that Plaintiff's Complaint should be dismissed because she did not join an indispensable party—her spouse. Defendants rely on Federal Rule of Civil Procedure 19 and argue that, should they prevail, they will not be accorded complete relief because Plaintiff's community property will be shielded from any recovery Defendants are awarded. (Doc. 20 at 12–13). Plaintiff responds by citing an Arizona case which states that a

---

[8] Because the Court finds that Plaintiff has stated a claim based on Arizona's assault statute, the Court need not reach the parties' arguments regarding Arizona's harassment statute.

- 12 -

plaintiff's spouse is a "proper, though not a necessary or indispensable, party." (Doc. 21 at 7) (citing *Dombey v. Phx. Newspapers, Inc.*, 708 P.2d 742, 747 (Ariz. Ct. App. 1985), *vacated on other grounds*, 724 P.2d 562 (Ariz. 1986)).

The Federal Rules of Civil Procedure state that: "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a). The court in *Weimer* discussed whether a plaintiff's spouse is an indispensable party under Rule 19(a). *Weimer v. Maricopa Cnty. Cmty. Coll. Dist.*, 184 F.R.D. 309, 310 (D. Ariz. 1998). There, Ricky Weimer, an Arizona resident, sued his employer for wrongful termination and violations of his constitutional rights under 42 U.S.C. § 1983. *Id.* at 309. Weimer was married but did not initially join his spouse as a plaintiff. *Id.* The court found Weimer's spouse to be an indispensable party under Rule 19(a) because state and federal law provided, in certain instances, that a prevailing defendant is entitled to attorneys' fees and costs. *Id.* at 310. The court reasoned that "[f]or a party to hold the marital community accountable for any obligation, it must sue both spouses jointly. In this case, Mrs. Weimer must be joined as a plaintiff for the marital community to be bound under a [potential] judgment awarding attorneys' fees to [the defendant]." *Id.* (internal citation omitted).

Here, as in the § 1983 action in *Weimer*, Defendants could potentially be awarded costs and attorneys' fees. *See* 42 U.S.C. § 2000e-5(k). Thus, Plaintiff's spouse is an indispensable party and must be joined.

Plaintiff's reliance on *Dombey* is misplaced. The court in *Weimer* considered *Dombey* in reaching its decision and found *Dombey* to be inapplicable to whether a plaintiff's spouse is an indispensable party. As the *Weimer* court noted, the issue in *Dombey* was whether a plaintiff's spouse was a *proper* party, not an *indispensable* party. *Weimer*, 184 F.R.D. at 310 n.2. The *Dombey* court "gave no reasoning as to why it found the spouse not to be a necessary party." *Id.* Furthermore, the *Weimer* court distinguished *Dombey* on the grounds that in *Weimer*, there was a "potential award of attorneys' fees in [the defendant's] favor."

- 13 -

1  *Id.* Here too, there is a potential award for attorneys' fees is Defendants favor, and the Court
2  agrees with the *Weimer* court that this fact distinguishes the instant case from *Dombey*.
3       Although the Court finds that Plaintiff's spouse is an indispensable party, the Court
4  need not dismiss the case.  As Defendants have requested in the alternative, the Court will
5  order Plaintiff to file a third amended complaint that joins Plaintiff's spouse as a party and
6  is otherwise consistent with this Order.

### D. Plaintiff's Complaint and Federal Rule of Civil Procedure 8

8       Defendants' final argument is that the Complaint should be stricken under Federal
9  Rule of Civil Procedure 12(f) because it does not comply with Rule 8(a).  Defendants point
10 to several paragraphs in Plaintiff's Complaint that span multiple pages.  Plaintiff responds
11 that if she were ordered to "abbreviate the allegations, this court would most likely be faced
12 with another motion to dismiss based upon *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544
13 (2007)."  (Doc. 21 at 8).
14      Rule 8(a) requires that pleadings contain "a short and plain statement of the claim
15 showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(f) allows
16 courts to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous
17 matter."  Fed. R. Civ. P. 12(f).  "'The function of a 12(f) motion to strike is to avoid the
18 expenditure of time and money that must arise from litigating spurious issues by dispensing
19 with those issues prior to trial.'"  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973
20 (9th Cir. 2010).  A party moving to strike a pleading under Rule 12(f) must point to those
21 portions of the complaint that are either redundant, immaterial, impertinent, or scandalous.
22 *Id.* at 973–74.
23      Defendants rely on *Hatch* in arguing that the Complaint should be stricken.  (Doc. 20
24 at 14) (citing *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985)).  In *Hatch*, the
25 Ninth Circuit affirmed a district court's dismissal of a complaint that exceeded 70 pages and
26 was "confusing and conclusory."  *Hatch*, 758 F.2d at 415.  Here, Plaintiff's Complaint, while
27 not a model of conciseness, is less than half the length of the complaint stricken in *Hatch*.
28 Further, Plaintiff's complaint is not confusing and is largely factual, not conclusory.  The

1 Complaint is sufficient to inform Defendants of the factual allegations underlying Plaintiff's
2 claims, and informs Defendants of the specific legal claims levied against them. Defendants
3 have not demonstrated which portions of the Complaint must be stricken because they are
4 redundant, immaterial, impertinent, or scandalous. Thus, the Court will not strike the
5 complaint under Rule 12(f).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 20) is granted in part and denied in part as contained herein.

**IT IS FURTHER ORDERED** that Plaintiff's fourth and fifth causes of action are dismissed.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss and Motion to Strike (Doc. 20) is denied in all other respects.

**IT IS FINALLY ORDERED** that, within five days of this Order, Plaintiff shall file an amended complaint consistent with this order and joining her spouse as a plaintiff. If Plaintiff fails to file an amended complaint within the allotted time, the Clerk shall dismiss this case without further notice pursuant to Federal Rule of Civil Procedure 41(b) for failure to obey a Court order.

DATED this 18th day of April, 2012.

James A. Teilborg
United States District Judge